# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA

| DOUGLAS L. PURNELL, | ) |
| --- | --- |
| Plaintiff, | ) |
| v. | ) CAUSE NO.: 3:15-CV-32-TLS |
| CAROLYN W. COLVIN,<br>Acting Commissioner of the Social<br>Security Administration, | ) |
| Defendant. | ) |

## OPINION AND ORDER

The Plaintiff, Douglas L. Purnell, seeks review of the final decision of the Commissioner of the Social Security Administration denying his application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). On May 31, 2012, the Plaintiff protectively filed applications for DIB and SSI, alleging disability beginning on January 25, 2011. The Plaintiff alleged that he was disabled due to arthritis, osteoarthritis, and an inability to focus.

An ALJ held a hearing on September 12, 2013, at which the Plaintiff—who was represented by an attorney—and a vocational expert both testified. On October 18, 2013, the ALJ found that the Plaintiff was not disabled. The Plaintiff requested review of the ALJ decision from the Appeals Council and subsequently initiated this civil action for judicial review of the Commissioner's final decision. For the reasons set forth in this Opinion and Order, this Court affirms the Commissioner's decision.

## STANDARD OF REVIEW

The ALJ's decision is the final decision of the Commissioner when the Appeals Council denies a request for review. *Liskowitz v. Astrue*, 559 F.3d 736, 739 (7th Cir. 2009). Judicial

review of the Commissioner's final decision is authorized by § 405(g) of the SSA. In reviewing this decision, the Court may not engage in its own analysis of whether the plaintiff is severely impaired as defined by the Social Security Regulations. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Nor may it "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute [its] own judgment for that of the Commissioner." *Id.* The Court's task is "limited to determining whether the ALJ's factual findings are supported by substantial evidence." *Id.* (citing 42 U.S.C. § 405(g)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Even if "reasonable minds could differ" about the disability status of the claimant, the court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

"In addition to relying on substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). The ALJ is not required to address every piece of evidence or testimony presented, but the ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009). Where the Commissioner's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). If the Commissioner commits an error of law, remand is warranted without regard to the volume of evidence in support of the factual findings. *Binion v. Chater*, 108 F.3d

780, 782 (7th Cir. 1997).

## ANALYSIS

Disability benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant must show that his "impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Social Security regulations set forth a five-step sequential evaluation process to be used in determining whether the claimant has established a disability. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v). The first step is to determine whether the claimant is presently engaged in substantial gainful activity (SGA). Here, the Plaintiff had a part-time job, but was not engaged in SGA, so the ALJ moved on to the second step, determining whether the claimant had a "severe" impairment or combination of impairments.

An impairment is severe if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521(a). "An impairment or combination of impairments is found 'not severe' and a finding of 'not disabled' is made at this step when medical evidence establishes only a slight abnormality or a combination of slight abnormalities

which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered (i.e., the person's impairment(s) has no more than a minimal effect on his or her physical or mental ability(ies) to perform basic work activities)." SSR 85-28. Examples of basic work activities include: (1) walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; (2) seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment, responding appropriately to supervision, coworkers, and usual work situations; and (5) dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b). The ALJ determined that the Plaintiff had medically determinative impairments of degenerative disc disease, arthritis, hypertension, and affective disorders. However, he concluded that these diagnosed conditions did not more than minimally limit the Plaintiff's ability to perform work activities. Because the ALJ found that the Plaintiff did not have an impairment, or combination of impairments, that had significantly limited—or was expected to significantly limit—his ability to perform basis work-related activities for twelve months, the Plaintiff could not be considered disabled. 20 C.F.R. § 404.1520(a), (c).

In an alternative finding, the ALJ concluded that even if the Plaintiff's impairments reached the qualifying severity level, he still maintained the residual functional capacity (RFC) to perform the full range of medium work. RFC is determined at the fourth step of the analysis, and is an assessment of the claimant's ability to perform sustained work-related physical and mental activities in light of his impairments. SSR 96–8p.

The ALJ found that the Plaintiff did not have past relevant work, but at the final step of the evaluation, determined that, in light of the Plaintiff's age, education, work experience, and

RFC, there were jobs that existed in significant numbers in the national economy that he could perform. *See* Medical-Vocational Rule 203.14.

On appeal, the Plaintiff alleges that the ALJ "ignored all the objective evidence supporting Plaintiff's allegations of reasonable exertional limitations due to hip pain, improperly evaluated the other source opinion of the Veteran Administration's evaluator who concluded Plaintiff's hip pain more than minimally affects his ability to work, and improperly discredited Plaintiff's allegations for reasons that are patently wrong." (Pl.'s Brief 1–2, ECF No. 23.) Additionally, the Plaintiff claims that the ALJ improperly evaluated several of his restrictions; specifically, his difficulty with bending, his need for regular unscheduled breaks for frequent urination, and his difficulty hearing or understanding others due to hearing loss.

Most, if not all, of the Plaintiff's challenges on appeal are to the ALJ's alternative Step 4 finding that, even if the Plaintiff's impairment reached the level of being severe, he had the RFC to perform the full range of medium work. In the "Discussion" section of his Brief, the first subheading is: "A. The Commissioner's Alternative findings regarding the Plaintiff's exertional abilities are not supported by substantial evidence and the relevant legal standards." (Pl.'s Brief 14.) Three subheadings follow: "Ignoring Supportive Medical Evidence," "Improper Evaluation of Other Source Medical Opinion," and "Patently Wrong Credibility Determination." The Plaintiff continues to discuss the ALJ's alternative RFC finding in the next subsection: "B. The Commissioner's adjudicator improperly evaluated the Plaintiff's postural limitations." (*Id.* at 21.) Lastly, the Plaintiff includes a subsection to argue that the "Commissioner's adjudicator improperly evaluated the Plaintiff's urinary frequency and hearing loss." (*Id.* at 22.) The Plaintiff does not specify whether this is a Step 2 or a Step 4 challenge, but argues generally about the

functional limitations caused by these conditions.

As stated above, the regulations set forth a five-step sequential evaluation process to be used in determining whether the claimant has established a disability. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v). "Deciding whether impairments are severe at Step 2 is a threshold issue only; an ALJ must continue on to the remaining steps of the evaluation process as long as there exists even *one* severe impairment." *Arnett v. Astrue*, 676 F.3d 586, 591 (7th Cir. 2012). Conversely, the ALJ was not required to proceed to the remaining steps if he found no disability at Step 2. *See* 20 C.F.R. § 404.1520(c) ("If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled."); *see also*
*Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992) ("A negative conclusion at any step (except for step three) precludes a finding of disability."). Here, because the ALJ concluded that the Plaintiff had no impairment or combination of impairments that significantly limited or was expected to significantly limit his ability to perform basic work-related activities for 12 consecutive months, the Plaintiff must successfully challenge that conclusion before any errors in the alternative ruling within the sequential evaluation process would require a remand.

For this reason, the Court will begin its review by looking first to any claims that would undermine the ALJ's Step 2 findings and require a remand. If the Plaintiff is not successful in establishing error at Step 2, there is no reason to discuss alternative findings because any error in those findings did not prejudice the Plaintiff. The Court finds that the only arguments the

6

Plaintiff develops that are not expressly directed at the alternative ruling are his claims that the ALJ improperly evaluated the Plaintiff's urinary frequency and hearing loss. (Pl.'s Brief 22–24, ECF No. 23.)[1]

A.     **Urinary Frequency**

During his Step 2 findings, the ALJ noted that the Plaintiff reported difficulties with urinary frequency. (R. at 23) (citing Ex. 5F/2; R. at 271.) He noted that the urinary frequency seemed to be "connected to [the Plaintiff's] alcoholism." (*Id.*) Although the Plaintiff disagrees with this statement, it is consistent with the information provided by the report of the consultative exam. During the exam, the Plaintiff reported that he had urinary frequency and got up several times a night. The examiner noted that this occurred "largely when he is drunk to loss of consciousness." (R. at 274.) The ALJ also noted that there was no record of how often the Plaintiff had these symptoms, but that more recent records failed to mention it. The ALJ cited the Plaintiff's hearing testimony, where he indicated that the problem occurs when he drinks fluids. According to the ALJ's assessment of the Plaintiff's testimony, he had learned to moderate his fluid intake "to such an extent he can work an eight-hour shift." (R. at 23.) The ALJ also noted that the Plaintiff was able to complete the hearing without interruption. The ALJ acknowledged that the Plaintiff had been diagnosed with hypertension, but he had frequently been noncompliant with his medication, and only had mild edema that went away when he laid down to sleep at night. Based on the foregoing, the ALJ found that the impairment did not more than

---

[1] As the Court stated earlier, it is not clear whether the Plaintiff intended the urinary frequency and hearing loss claims as a challenge to the Step 2 findings, or whether they are additional challenges to the alternative findings. However, out of an abundance of caution, the Court will address the arguments as if they are contesting the Step 2 findings.

7

minimally limit the Plaintiff's ability to perform work activity.

The Plaintiff takes issue with the ALJ's findings, arguing that they do not "present the whole picture." (Pl.'s Brief 23.) The Plaintiff points to an April 2010 emergency room visit for urinary incontinence. This, however, was not a recent record. Moreover, even during that visit, the Plaintiff stated that the condition worsened when he drank alcohol or caffeine, that he had consumed alcohol that night, and that he drank 40 ounces of beer about every other day. The Plaintiff was directed to avoid alcohol and caffeine and encouraged to follow up with a urologist. For his history of high blood pressure, he was encouraged to follow up with a family practice physician. Nothing from this medical record contradicts the ALJ's findings.

The Plaintiff also argues that, "in contrast to the ALJ's discussion, the record indicates that in November 2011 after the claimant reported 'some urgency of urination,' Dr. John Decelles observed an enlarged prostrate and diagnosed the claimant with an enlarged prostrate ('BPH') and spastic bladder." (*Id.*) Thus, he argues, both the ALJ's finding that the Plaintiff's urinary frequency was a symptom of alcoholism and his declaration that the most recent records failed to mention the symptom, were erroneous. But the November 2011 visit was almost two years prior to the hearing, and therefore, would not have been considered among the most recent records. Instead, the ALJ relied on the Plaintiff's testimony at the hearing, where he discussed his management of the problem when he worked 8-hour shifts on Saturday and Sunday for the City of South Bend street department. He testified that in order to perform these 8-hour shifts on Saturday and Sunday, he would drive the City truck to a bathroom. However, the Plaintiff did not state how often he would have to "get to a bathroom." (R. at 51.) He also testified that he would "slow my drinking habit down, you know. I don't drink too much when I'm getting ready

to go to work for my—them [two] days. I'll just kind of, your know, focus on the work and don't drink too much." (*Id.*) He would then get a drink when he returned home. He testified that he had to urinate every half hour if he drank anything, and that was why he elected not to drink much water during the hearing.

"A determination that an impairment(s) is not severe requires a careful evaluation of the medical findings which describe the impairment(s) and an informed judgment about its (their) limiting effects on the individual's physical and mental ability(ies) to perform basic work activities." SSR 85-28. Even if the claimant can show objective medical evidence of a condition, such as spastic bladder, the question is to what degree those conditions affect the claimant's ability to perform basic work activities. The Court finds that the ALJ evaluated the appropriate medical findings and made an informed judgement about the impact of urinary frequency on the Plaintiff's ability to perform basic work activities. Substantial evidence supports the ALJ's conclusion that the Plaintiff's urinary frequency did not combine with any other impairment to more than minimally limit his ability to perform work activities.

**B.     Hearing Loss**

The Plaintiff asserts that the "ALJ erred by wholly ignoring the Plaintiff's hearing loss when assessing his ability to perform other work." (Pl.'s Brief 24.) The Plaintiff's reference to "other work" suggests that the Plaintiff believes that the ALJ should have considered the Plaintiff's hearing loss during the RFC finding. If so, the Step 2 findings—that the Plaintiff had no severe impairments—would remain unchallenged and there would be no grounds for reversal. But even if the Plaintiff intended to argue that the hearing loss was a severe impairment, the

Court finds no basis to reverse the ALJ's decision.

The burden was on the Plaintiff to explain why he was disabled as a result of his impairments. *See Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004) ("It is axiomatic that the claimant bears the burden of supplying adequate records and evidence to prove their claim of disability.") (citing 20 C.F.R. § 404.1512(c)); *see also Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005) (The "claimant bears the burden of proof at steps one through four, after which at step five the burden shifts to the Commissioner."). The Plaintiff failed to satisfy his burden, especially considering that he was represented by counsel throughout the pendency of the proceedings. *See Skinner v. Astrue*, 478 F.3d 836, 842 (7th Cir. 2007) (explaining that "a claimant represented by counsel is presumed to have made his best case before the ALJ").

When the ALJ asked the Plaintiff's counsel what she contended was the medically determinable severe impairment, she responded:

> [The Plaintiff] has degeneration of his lumbar spine, as well as osteoarthritis of his right hip. Additionally, he does have some issues with urinary frequency. I don't think that's been diagnosed with anything specific. I think based on both of those, he'd be unable to maintain more than light level work at this time.

(R. at 38.) At no time during the hearing did counsel ask the Plaintiff questions related to his hearing loss. The Plaintiff cannot now claim that the ALJ should have considered his report of "some difficulty hearing/understanding certain voices due to their frequency" as an impairment that more than minimally affected his ability to work. (R. at 599.)

### C.     Other Source Medical Opinion

The Plaintiff asserts that the ALJ did not articulate a reasonable and supported rationale for discrediting the opinion of Thomas Mallot, a physician's assistant, going to the functional

10

impact of the Plaintiff's hip pain. This argument was made within the context of challenging the RFC. Nevertheless, the Court will address it, as the Plaintiff's arguments potentially impact the Step 2 findings where basic work activities "are inherent in making a determination that an individual does not have a severe medical impairment." SSR 85-28.

Opinions from examining physician's assistants are not medical opinions that are entitled to controlling weight, but they "should be evaluated on key issues such as impairment severity and functional effects." SSR 06-03p. In deciding how much weight to give to opinions from these "other medical sources," an ALJ should apply the same criteria listed in 20 C.F.R. § 404.1527(d)(2) & 416.927(d), such as the length of treatment, how consistent the opinion is with other evidence, the degree to which the source presents relevant evidence to support an opinion, how well the source explains the opinion, and the source's specialty or area of expertise. "Not every factor for weighing opinion evidence will apply in every case. The evaluation of an opinion from a medical source who is not an 'acceptable medical source' depends on the particular facts in each case. Each case must be adjudicated on its own merits based on a consideration of the probative value of the opinions and a weighing of all the evidence in that particular case." SSR 06-03p.

Here, the ALJ gave Mallot's opinion—that the Plaintiff's right hip would more than minimally limit him—only some weight on grounds that it was inconsistent with the record. (R. at 25.) He reasoned that Mallot noted that the Plaintiff would be limited due to pain, but did not actually specify any limitations. Neither did his additional comments in the remarks section of the report "suggest any limitations." (*Id.*) Rather, in this section of his report, Mallot stated that diagnostic images did not show significant arthritis in the hip, a neural exam was normal, and a

leg lift was negative. Additionally, Mallot remarked that the Plaintiff denied flare ups and indicators did not point to any significant further loss of motion due to pain, fatigue, or weakness.

The Plaintiff characterizes the ALJ's opinion as "anything but logical." (Pl.'s Brief 16.) He takes issue with the fact that the ALJ simultaneously acknowledged that Mallot indicated that hip pain *would* cause limitations, and then stated that the remarks *did not* suggest limitations. The Court was able to follow the ALJ's logic. The ALJ first noted Mallot's statement that the Plaintiff would be limited by pain. However, the ALJ noted that Mallot did not specify what those limitations would be. That is, he did not articulate any functional restrictions. The ALJ then highlighted Mallot's comments in the remarks section. He found that they, likewise, did not "suggest any limitations." That is, they did not support his vague statement that the Plaintiff's hip was limiting. In fact, they implied just the opposite—that the Plaintiff's hip would not cause more than minimal limitations on basic work activities. The ALJ comments go to two of the recognized factors for weighing opinion evidence: (1) the degree to which the source presents relevant evidence to support an opinion; and (2) how well the source explains the opinion.

The ALJ provided enough detail and clarity to permit meaningful review of his conclusion that Mallot's opinion did not contain sufficient evidence of the impact on the Plaintiff's ability to perform basic work activities. Substantial evidence supports the ALJ's decision regarding the weight to assign the opinion.

**D.     Hip Pain**

For completeness, the Court also takes up the Plaintiff's claim, although made as a

challenge to the RFC, that the ALJ ignored objective medical evidence that supported his allegations of hip pain. The Step 2 findings are implicated if this pain caused severe limitations on the Plaintiff's ability to perform basic work activities. The ALJ discussed the Plaintiff's hip, as well his back and right knee, in connection with his arthritis:

> In terms of the claimant's alleged arthritis, the record does not indicate this impairment more than minimally limits his ability to perform work activity. The claimant has treated for pain in his back, hip, and right knee (Exhibits 10F; 11F). However, diagnostic images failed to reveal any severe limitations. An x-ray of the claimant's lumbar spine performed on June 22, 2012 revealed only mild changes in the facet joints of his lower lumbar spine (Exhibit 10F/4). An x-ray of the claimant's right hip performed on this date revealed only mild hypertrophic changes involving the anterolateral margin of the acetabulum (Exhibit 10F/6). The claimant also had an x-ray of his right knee on June 22, 2012, but that failed to reveal any abnormalities at all (Exhibit 10F/7). The claimant's medical providers at the Veteran's Administration indicate there is no indication for surgery on the claimant's lumbar spine and that he should be treated conservatively (Exhibit 11F/49). These records also indicate the claimant has good mobility, although he has difficulty with bending his back more than several times. Surgery is likewise not indicated for the claimant's hip, and he is noted to be walking well and taking non-narcotic pain medication. The claimant's knee has likewise been determined not to require surgery as he reports his knee is tolerable, and that he mainly has mild pain when he stands over an hour. Further testing revealed the claimant has some limitations in the range of motion of his lumbar spine secondary to pain, but that his range of motion is otherwise good (Exhibit 11F/55). After a thorough examination, the Veteran's Administration indicated the claimant's back, knee, and lower leg conditions do not impact his ability to work (Exhibit 11F/62, 84). Oddly, the Veteran's Administration indicated the claimant's hip might impact his ability to work, but the only example is "due mostly to pain" (Exhibit 11F/74). The remarks section indicates the claimant's hip imaging failed to show significant arthritis, that his pain may be radiating from his back, a neural exam was normal, and that a leg lift was negative. The claimant denied flare ups. The claimant testified that he is not currently undergoing treatment for his arthritis, but he takes medication (Hearing Testimony). The claimant testified his medication helps him with his pain, although he still has some residual pain.

(R. at 22.)

The Plaintiff maintains that this discussion is incomplete, and that the ALJ "never

13

assessed the medical evidence that seems to support [Plaintiff's] contention that he was in significant pain." (Pl.'s Br. 15 ) (quoting *Ribaudo v. Barnhart*, 458 F.3d 580, 584–85 (7th Cir. 2006)). The Plaintiff's argument is not persuasive. An ALJ is not required to address every piece of evidence in his decision. *Sims v. Barnhart*, 309 F.3d 424, 429 (7th Cir. 2002). What is required is "a bridge from the evidence to his conclusion." *Id.* (quoting *Green v. Apfel*, 204 F.3d 780, 781 (7th Cir. 2000). Such a bridge is present here. The ALJ acknowledged that the Plaintiff had been treated for hip pain, and acknowledged the Veteran's Administration report indicating that his pain in his hip would impact his ability to work. Thus, the ALJ did not ignore an entire line of medical evidence. *See Golembiewski v. Barnhart*, 322 F.3d 912 (7th Cir. 2003) (stating that evidence that the plaintiff's bladder impairment did not interfere with his work is a reason for the ALJ to discount the disabling nature of the problem, but it cannot justify ignoring the problem entirely). Rather, he weighed the evidence in light of the fact that an x-ray showed only mild hypertrophic changes involving the anterolateral margin of the acetabulum, and that surgery was not indicated for the claimant's hip, as he was noted to be walking well and taking non-narcotic pain medication. Additionally, with regard to the Veteran's Administration Report, it failed to cite any specific limitation related to the ability to work, which the ALJ accurately noted. Moreover, the remarks section of the Report stated that hip imaging did not show significant arthritis, that his pain could be radiating from his back, that a neural exam was normal, and that a leg lift was negative. Additionally, the Plaintiff denied flare ups, and "[i]ndicators do not point to any significant further loss of motion due to pain or fatigue or weakness." (R. at 572.)

       The ALJ also noted that the report of the Plaintiff's consultative examination was

consistent with the analysis of the Veteran's Administration. Specifically, the consultative examiner indicated that the Plaintiff had full range of motion in all his joints, although he did not mention if there was any pain. The Plaintiff had reported that he could walk 3 blocks, and that he had no difficulty shopping, sweeping, vacuuming, cooking, doing dishes, and that he could climb stairs and mow grass for short intervals. The Plaintiff had a normal gait and no difficulty with orthopedic maneuvers such as walking on his heels or toes, squatting, or walking heel to toe. The Plaintiff appeared to have no physical abnormality while performing the range of motion testing or when the examination was being performed. "The State agency medical consultants are in unanimous agreement that the claimant has no severe impairments." (R. at 23.)

An impairment, or combination of impairments, is not considered severe if it does not "significantly limit" the individual's "physical or mental ability to do basic work activities," which are the "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921. "[A]n ALJ is not required to discuss every snippet of information from the medical records that might be inconsistent with the rest of the objective medical evidence." *Pepper v. Colvin*, 712 F.3d 351, 363 (7th Cir. 2013). The ALJ's articulation of his analysis of the evidence allows this Court to trace his path of reasoning and be assured that he considered important evidence to conclude that the Plaintiff's arthritis did not cause any significant work-related limitations on his functioning. This Court is not to reconsider facts, re-weigh the evidence, resolve conflicts in the evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005). This Court's review of the record leads to the conclusion that the ALJ's decision was supported by such relevant evidence as a reasonable person might accept as adequate to support the ALJ's finding that the Plaintiff does not suffer from a severe

impairment, despite some restricted movement in his hip and some reported pain.

## **CONCLUSION**

For the reasons stated above, the Court AFFIRMS the Commissioner's decision. The Clerk of this Court is directed to ENTER JUDGMENT in favor of the Defendant and against the Plaintiff.

SO ORDERED on January 25, 2016.

                                                s/ Theresa L. Springmann
                                                THERESA L. SPRINGMANN
                                                UNITED STATES DISTRICT COURT
                                                FORT WAYNE DIVISION